UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ZHENDONG LIU,
*individually and on behalf of all other
employees similarly situated*,

                  Plaintiff,                   **MEMORANDUM AND ORDER**
                                                  18-CV-2181 (RPK) (VMS)

       -against-

LITTLE SAIGON CUISINE INC.,
*d/b/a Little Saigon Cuisine*, and
CHRISTY ZHANG,

                  Defendants.
----------------------------------------------------------X
RACHEL P. KOVNER, United States District Judge:

      Plaintiff Zhendong Liu brings claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against Little Saigon Cuisine Inc., a restaurant where he worked, and Christy Zhang, the owner of that restaurant. *See* Compl. (Dkt. #1). I held a one-day bench trial on August 10, 2020, at which plaintiff and the individual defendant testified. At the conclusion of plaintiff's case, I entered judgment for defendants on plaintiff's FLSA claims, but I retained supplemental jurisdiction over the state-law claims. *See* Minute Entry and Order (Aug. 10, 2020); Trial Tr. 63:4-70:19. I reserved judgment on two evidentiary issues and on plaintiff's motion for a directed verdict on the state-law claims. *See* Trial Tr. 103:22-105:13; 107:21-109:16. The parties submitted post-trial briefing on the remaining issues. *See* Defs.' Post-Trial Br. (Dkt. #60); Pl.'s Post-Trial Br. (Dkt. #61).

      After considering the evidence introduced at trial, the arguments of counsel, and the controlling law on the issues presented, I set forth below findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. I resolve the two outstanding evidentiary issues in defendants' favor. Having dismissed plaintiff's claims under the FLSA during trial (Counts I,

III, and VIII), I now conclude that plaintiff has not sustained his burden on his claims under the NYLL for unpaid minimum wages (Count II), unpaid overtime compensation (Count IV), and spread-of-hours pay (Count V).  Plaintiff has shown, however, that defendants failed to provide him with a time-of-hire wage notice and wage statements per pay period as required by NYLL § 195 (Counts VI and VII).  Plaintiff is therefore entitled to judgment and awarded damages for Counts VI and VII.  Defendants are entitled to judgment on the remaining claims.

## EVIDENTIARY ISSUES

At trial, plaintiff relied on his own testimony and on the corporate defendant's tax returns from 2016 through 2018.  Defendants relied on Ms. Zhang's trial testimony, the same tax returns, and several pages of pay receipts that carry what appears to be plaintiff's signature. Partway through the trial, defendants' counsel realized that he had made a clerical error concerning the pay-receipts exhibit, and moved to substitute the slightly longer version that he had intended to submit.  Trial Tr. 103:22-105:13.  Defendants also sought to introduce plaintiff's complaint.  Trial Tr. 107:21-109:16.  Plaintiff objected to both requests.  The parties filed post-trial letters outlining their arguments about the admissibility of the complaint.  *See* Pl.'s Ltr. (Dkt. #59); Defs.' Ltr. (Dkt. #58).  I resolve both disputes before turning to the findings of fact.

### A.      Pay Receipts

During the trial, defendants introduced into evidence Exhibit DX-C.  As introduced, the exhibit contains four pages of pay receipts.  Defendants also shared that four-page exhibit with the Court and plaintiff's counsel several days before trial in compliance with a pretrial order. *See* Order (Aug. 5, 2020) (Dkt. #56).  Partway through the trial, however, defendants' counsel realized that he had inadvertently left out several pages of pay receipts from that exhibit. Defendants sought leave to replace Exhibit DX-C with an eight-page version of the pay receipts document that was previously filed on the docket in late May 2020.  *See* Trial Tr. 103:22-24;

Defs.' Response to Mot. in Limine (Dkt. #47).  Plaintiff objected because the longer version was not included in the exhibits that defendants submitted to the Court a few days before the trial. *See* Trial Tr. 104:21-23.  I grant defendants' request and replace the previously admitted Exhibit DX-C with the longer version of the pay receipts document filed at Dkt. #47.

Trial courts have "broad discretion in managing a trial."  *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45 (2d Cir. 1994) (citation omitted).  That discretion "includes a certain amount of latitude to deviate from the terms of a pretrial order."  *Ibid.* (citation omitted); *see* 6A C. Wright, A. Miller, M. Kane, & A. Spencer, Federal Practice & Procedure § 1527 (3d ed. 2021); Fed. R. Civ. P. 16(e) (governing final pretrial orders).  In determining whether to modify or depart from a pretrial order under Federal Rule of Civil Procedure 16(e), for example, courts in this circuit consider "the prejudice or surprise" to the opposing party, "the ability of the party to cure the prejudice," and the "[p]rejudice to the party seeking amendment" of the order, among other factors.  *Potthast v. Metro-North R.R. Co.*, 400 F.3d 143, 153 (2d Cir. 2005); *see Maehr v. NRG Home Solar*, No. 16-CV-3897, 2019 WL 1559423, at *4 (E.D.N.Y. Apr. 10, 2019).

The dispute here does not directly implicate Rule 16(e) because defendants made a clerical error that can be corrected without modification of the joint pretrial order.  *See* Joint Pretrial Order (Dkt. #36).  Moreover, in May 2020, defendants filed all eight pages of pay receipts on the docket in response to plaintiff's assertion in a motion *in limine* that defendants never shared the pay receipts they intended to introduce as an exhibit at trial.  *See* Defs.' Response to Mot. in Limine; *see also* Pl.'s Mot. in Limine (Dkt. #45); Joint Pretrial Order. Nevertheless, I look to the factors bearing on modification of pretrial orders as relevant to the analogous change in trial plans that is presented here, when a party seeks to modify its proposed exhibits.  Considering those factors, I permit defendants' substitution.

First, plaintiff cannot claim to be particularly surprised by the introduction of the longer version of the exhibit.  Plaintiff was on notice for many months that defendants intended to offer at least some pay receipts at trial, and he had access to all eight pages of pay receipts since at least the end of May 2020.  In fact, it appears that the eight-page version of the pay receipts document was the only version of the document that plaintiff had access to until just a few days before trial, when defendants submitted their erroneous exhibit to the Court.  *See Callari v. Blackman Plumbing Supply, Inc*., No. 11-CV-3655, 2016 WL 1273237, at *7 (E.D.N.Y. Mar. 31, 2016) (granting modification where the movant sought to add nine witnesses to the pretrial order, because plaintiffs "ha[d] been on notice" of their identities from supplemental disclosures for almost a year).

In addition, plaintiff cannot demonstrate prejudice.  Plaintiff knew what information was contained in the additional pages of the pay receipts, and plaintiff's counsel referred to the eight-page version during his cross-examination of defendant Zhang.  Trial Tr. 90:21-91:19; *see Maehr*, No. 16-CV-3897, 2019 WL 1559423, at *5 (allowing plaintiff to add exhibits and witnesses to the joint pretrial order because the defendant "knew the evidence might exist well before the close of discovery").  Indeed, if anything, it would be unfair to defendants if plaintiff were permitted to refer to portions of the eight-page document that were helpful to plaintiff, while defendants were prevented from admitting the rest of the exhibit.  I therefore grant defendants' request to substitute the pay receipts documents.  Any reference to the pay receipts or Exhibit DX-C below shall refer to the longer version of that exhibit.

### B.    Complaint

Defendants seek to introduce into evidence plaintiff's unsigned complaint.  Defendants point to discrepancies between certain of the allegations in the complaint and plaintiff's testimony at trial, and they argue that those inconsistent statements undermine plaintiff's

credibility as a witness.  *See* Defs.' Post-Trial Br. at 3-5; Defs.' Ltr. at 1.  Plaintiff opposes introduction of the complaint on the grounds that the complaint is hearsay and that use of the complaint as evidence against him would be inconsistent with Federal Rule of Civil Procedure 8. *See* Pl.'s Ltr. at 1-2.

A party's pleadings are admissible as that party's admissions to the facts alleged in the pleadings.  *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (stating that the allegations in plaintiff's operative complaint were "judicial admissions" by which plaintiff was "bound throughout the course of the proceeding" (quotations omitted)).  Indeed, even where a pleading has been superseded or amended, the original pleading may be admitted as an admission of the party who filed it.  *See United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) ("The law is quite clear that [superseded] pleadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party."); *see also Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) ("The amendment of a pleading does not make it any the less an admission of the party.").  Plaintiff's operative complaint is admissible against him.

Along the same lines, plaintiff's complaint is not hearsay because Federal Rule of Evidence 801(d)(2) excludes from the definition of hearsay a party's own statement offered against him.  *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (collecting cases in the Fifth, Sixth, and Ninth Circuits observing the same).  I therefore consider the complaint as part of the record in making the findings of fact set forth below.

**FINDINGS OF FACT**

**I.     The Parties**

Defendant Little Saigon Cuisine is a corporation organized under the laws of New York that operates a Vietnamese restaurant in Little Neck, New York.  *See* Joint Pretrial Order at 3. Defendant Christy Zhang is the owner of Little Saigon Cuisine.  *See id.* at 4; Trial Tr. 73:8-9. Little Saigon Cuisine generally employs three to four employees, including Ms. Zhang and her husband.  *See* Trial Tr. 87:5-7.  Plaintiff Zhendong Liu worked at the Little Saigon Cuisine restaurant before his employment was terminated in April 2018.  *See* Trial Tr. 73:24-74:2; 83:10-21; *see also* Joint Pretrial Order at 3.

**II.    Credibility**

At the outset, I make the following determinations about the witnesses' credibility.

**A.     Plaintiff**

I find that plaintiff's testimony was largely not credible.  First, plaintiff appeared evasive and agitated during cross-examination, and I had to direct him to focus and answer the question posed by defendants' counsel on more than one occasion.  *See* Trial Tr. 48:5-8; 50:1-8.  At one point, I directed defendants' counsel to "just move on to [counsel's] next question" because plaintiff was not cooperating.  Trial Tr. 48:20.  In addition, plaintiff claimed to be unable to answer defendants' counsel's questions on cross-examination because he suffers from a "severe memory issue."  Trial Tr. 49:7-8; *see* Trial Tr. 50:24-51:9.  Plaintiff did not disclose his purported memory issue before cross-examination, and neither plaintiff nor his counsel explained why the Court should nonetheless credit his testimony on direct examination.  Moreover, plaintiff was less than forthcoming during direct examination about issues that would be relevant to calculating damages were I to credit his testimony.  Specifically, plaintiff failed to acknowledge the breaks in his employment with defendants—even though plaintiff did not

6

contest defendants' claim at trial that his employment with defendants was not continuous, and even though he had access before trial to defendants' pay receipts exhibit, which indicates significant gaps in his tenure at Little Saigon Cuisine. *See* Trial Tr. 22:26-24:13. Nor could he recall the month or the year when he was first hired by defendants. Trial Tr. 16:18-22.

Moreover, plaintiff made seemingly inconsistent statements throughout his testimony. *See* Trial Tr. 19:4-5; 26:16-21; 26:23-27:1; 27:5-8 (discussing the hour his shift ended each day); Trial Tr. 20:14; 54:8-16 (discussing the extent of his knowledge of prices of menu items). In the context of the other evidence, these inconsistencies further undercut plaintiff's credibility. And plaintiff and his counsel failed to rebut or even acknowledge defendant Zhang's testimony that plaintiff was fired because he "used [a] knife to stab the chef." Trial Tr. 83:18-21. That unrebutted testimony suggests that plaintiff may have a motive not to be entirely truthful about his employment at Little Saigon Cuisine and his relationship with his former employers.

Finally, plaintiff's complaint contains allegations that plaintiff acknowledged at trial were not true. In particular, the complaint alleges that plaintiff made deliveries using a car and incurred hundreds of dollars of unreimbursed parking tickets, *see* Compl. ¶ 90, but plaintiff testified at trial that he only ever made deliveries by walking, *see* Trial Tr. 28:2-11. Similarly, the complaint alleges that plaintiff began working at Little Saigon in 2010, *see* Compl. ¶ 7, but plaintiff testified at trial that he could not remember when he began work, *see* Trial Tr. 27:18-24. As discussed above, statements in pleadings may be appropriately attributed to the parties on whose behalf they are filed. *See* Fed. R. Evid. 801(d)(2); *see also Official Comm. of Unsecured Creditors of Color Tile, Inc.*, 322 F.3d at 167. Here, the inconsistencies between plaintiff's complaint and his testimony at trial further undermine plaintiff's credibility.

### B.  Defendant Zhang

In contrast, defendant Christy Zhang was a generally credible witness.  Ms. Zhang was responsive and did not appear to be evasive.  She admitted, without hesitation, several facts that were clearly not in her interest—including that she did not keep time records of plaintiff's wages when he was first hired, *see* Trial Tr. 93:1-9, and that she did not have a method for recording time other than by the opening and closing hours of the restaurant, *see* Trial Tr. 91:16-18.

## III.  Factual Determinations

With the above determinations in mind, I make the following findings of fact.

### A.  Defendant Little Saigon Cuisine's Gross Sales

The most credible information in the record about Little Saigon Cuisine's annual gross sales comes from the restaurant's tax returns from 2016 through 2018.  According to those tax returns, the restaurant's "[g]ross receipts or sales" were $300,745 in 2016, $344,534 in 2017, and $366,155 in 2018.  *See* Exs. PX-1a, PX-1b, and PX-1c ("Tax Returns").

Plaintiff failed to demonstrate that the tax returns were inaccurate with respect to defendants' gross sales each year.  He did not offer persuasive alternative evidence of the restaurant's income during the relevant years.  While plaintiff deposed defendants' accountant prior to trial, he elected not to call the accountant as a trial witness and did not seek to introduce any portions of the deposition transcript.  Instead, plaintiff provided vague testimony about the price of some of the dishes that he prepared when he was employed there.  *See* Trial Tr. 20:12-24; 38:23-25.  But plaintiff could not extrapolate from the price of those dishes the income of the restaurant, even approximately, because he could not say how many dishes were sold per day. For example, in response to a question about how many spring rolls the restaurant sold per day, plaintiff replied, "Sometimes more, sometimes less, but the spring rolls that I made were all sold out," Trial Tr. 20:25-21:3, and that he was "not counting them," but it was "a plate, plateful,"

Trial Tr. 21:12-15.  He also testified that he only knew the prices of the dishes that he made, *see* Trial Tr. 38:23-25, and that he often could not see the cash register from where he was working, *see* Trial Tr. 40:22-41:5; 41:14-42:3.

Plaintiff seemed to suggest that the tax returns underestimated the restaurant's receipts because they reflected payments made by credit card but not payments made by cash.  *See* Trial Tr. 22:5-14.  He testified that when defendant Zhang's husband gave him a ride home, he "was able to see that about 50 to 60 percent" of customer payments were cash payments, and about "20 to 30 percent" were payments by other means.  Trial Tr. 22:12-14.  But plaintiff presented no credible evidence to that effect.  Plaintiff did not explain how he arrived at those percentages or what he saw in the car that gave him that impression.  Nor did he offer evidence supporting the conclusion that—even if these ratios were accurate—the cash payments were not among those reported as gross receipts or sales on the business's tax returns.

I therefore conclude that the tax returns are the most reliable and credible evidence of the stores' income.  Although the copies of the tax returns for 2017 and 2018 were not signed by defendants, plaintiff did not present any good-faith evidence to contradict them.

**B.    Defendants' Notice and Payment Practices**

The parties agree that defendants did not keep records of plaintiff's employment other than the pay receipts introduced into evidence, and they agree that defendants did not provide plaintiff with wage notices.  *See* Pl.'s Post-Trial Br. at 10-12; Defs.' Post-Trial Br. at 1-2, 8.

Plaintiff testified that he did not receive a written notice regarding his wage when he first met with defendant Zhang at the start of his employment.  *See* Trial Tr. 25:2-4.  He also testified that he did not receive any notices when his compensation changed, or any tax documents.  *See* Trial Tr. 25:5-7; 26:2-4.  Plaintiff further testified that he did not use a timecard or any other

method to record his time, Trial Tr. 26:5-8, and that he did not know if defendants used any system for recording his time, Trial Tr. 26:12-15.  Plaintiff acknowledged, however, that he signed his name on the pay receipts when he received his compensation every two weeks. *See* Trial Tr. 25:17-24; *see also* Trial Tr. 42:13-21.

Similarly, defendant Zhang stated that the pay receipts are the only record of plaintiff's employment and wages.  *See* Trial Tr. 85:25-86:7; 92:1-6.  She did not use a "time recording mechanism" for plaintiff's hours because Little Saigon Cuisine is "a very small restaurant," Trial Tr. 90:15-18.  Instead, she explained that they just "go by [their] opening hour and closing hour and that's [their] time records."  Trial Tr. 91:17-18.  Ms. Zhang testified that she generally paid plaintiff in cash, but she did not provide plaintiff with an IRS Form 1099 because he did not want one.  *See* Trial Tr. 89:21-90:3.  Ms. Zhang did testify that she provided plaintiff with one document around the time that he first started working for the defendants "that certifies his work at the restaurant for him to apply for medical benefits," but that she did not keep a copy of it. *See* Trial Tr. 96:7-16.

### C.  Plaintiff's Employment Tenure

Defendants hired plaintiff through an employment agency.  Trial Tr. 17:12; 74:1-4.  The parties appear to dispute the month and year that plaintiff began working at Little Saigon Cuisine.[1]  Plaintiff's counsel represented in his opening statement that plaintiff worked for defendants beginning in 2010, *see* Trial Tr. 5:6-9, which matches the allegation in plaintiff's complaint, *see* Compl. ¶ 22.  But plaintiff himself only testified that he thought he might have started working "somewhere between May to October, roughly" in an unspecified year because he "was wearing thick winter clothing."  Trial Tr. 16:18-22.  Defendant Zhang testified that she

---

[1]  In the joint pretrial order, the parties stipulate that plaintiff "worked at Little Saigon Cuisine during the time period relevant to the complaint."  Joint Pretrial Order at 3.  The joint pretrial order does not provide any specific information about that period.  I do not credit that vague statement over the testimony from both parties at trial.

believed plaintiff began working for defendants in December 2012, Trial Tr. 74:8-9, and that he worked three months between December 2012 and the first pay receipt record in August 2013, *see* Trial Tr. 96:1-7.   I credit defendant Zhang's testimony because she was more specific, because she was a more credible witness, and because the admission that plaintiff started in December 2012 was against her interest, as she does not have pay receipts for plaintiff prior to mid-2013. The parties agree that plaintiff stopped working for defendants in April 2018. Defendant Zhang's unrebutted testimony is that plaintiff was fired because everyone was "afraid" of him and because he "used [a] knife to stab the chef." Trial Tr. 83:10-21.

Defendant Zhang also testified credibly that plaintiff's employment was not continuous from December 2012 to April 2018.  According to Ms. Zhang, defendant took four or five breaks from work.  *See* Trial Tr. 84:1-18.  Although she did not provide many details about these breaks, she explained that (i) plaintiff took a break near the end of 2013, from approximately mid-October to the end of December, *see* Trial Tr. 85:3-14; (ii) he took eight months off in an unspecified year when he left the country, *see* Trial Tr. 84:6-8; and (iii) he never worked "a whole year," Trial Tr. 84:17-18.  Ms. Zhang's testimony is largely substantiated by the pay receipts, which both Ms. Zhang and plaintiff suggested were complete records of plaintiff's employment as of mid-2013, with two principal exceptions.  *See* Trial Tr. 85:25-86:6; 25:2-26:19.  First, Ms. Zhang acknowledged that the pay receipts do not capture the months that plaintiff worked before August 2013.  *See* Trial Tr. 96:1-7.  Second, Ms. Zhang testified that plaintiff took an eight-month break from work, but the pay receipts suggest that he took even longer breaks.  *See* Trial Tr. 84:4-8; Ex. DX-C ("Pay Receipts").  Taking the evidence together, I conclude that plaintiff worked for defendants during the periods indicated by the pay receipts, plus three months between December 2012 and the first pay receipt in August 2013.

### D.      Plaintiff's Job Responsibilities

Plaintiff's job responsibilities included washing dishes, chopping vegetables, and some cooking (although the extent to which plaintiff prepared dishes is unclear on this record).  *See, e.g.*, Trial Tr. 16:9-17; 18:16-17; 39:10-19; 79:4-7; 97:10-12.   Plaintiff also claimed to have made take-out deliveries on foot, although defendant Zhang disputes this.  *See* Trial Tr. 27:17; 27:25-28:2; 28:11; 83:2-9.  I need not resolve that disputed question because it is not material to plaintiffs' claims.   Plaintiff acknowledged at trial that he did not make any deliveries using a vehicle, *see* Trial Tr. 34:3-18; 35:2-6; 35:20-23, even though he claimed in his complaint that defendants failed to reimburse him for $1,100 in tickets he incurred while making deliveries for defendants and for $108 per week in gasoline, *see* Compl. ¶ 90.

### E.      Plaintiff's Hours & Wages

#### 1.      Plaintiff's Testimony

Plaintiff testified that he worked at Little Saigon Cuisine six days per week, with Tuesdays off.  Trial Tr. 19:6-10.  Plaintiff was less clear about the number of hours he worked. Plaintiff first testified that he was told to arrive before 10:30 a.m.  *See* Trial Tr. 18:18-20.  He then said that the restaurant opened "whenever" he arrived because he had the key, Trial Tr. 44:2-8, a point Ms. Zhang disputes, *see* Trial Tr. 81:5-6.

Plaintiff also initially testified that his shift would "usually" end at either 11 or 11:30 p.m., Trial Tr. 19:4-5, but stated a few minutes later that, "actually," he worked past 11 p.m. "every day on a daily basis," Trial Tr. 26:16-21.  Plaintiff clarified that "there was no official time to get off work" and that, "basically," his shift finished when there were "no more customers."  Trial Tr. 26:23-27:1.  But he immediately followed that statement by saying he would generally leave work "after 11, after 10:30."  Trial Tr. 27:5-8.

Plaintiff further testified that he took a meal break (for an unspecified period of time), *see* Trial Tr. 24:14-16, but that he "frequently" had to serve customers who came into the restaurant during his break, *see* Trial Tr. 24:17-25:1.  He did not provide any information about vacation periods or breaks in his employment.

Plaintiff states that he was paid twice a month, *see* Trial Tr. 25:13-16, that his monthly wages started at $1,300, and that he received periodic raises of $100 until he was making $1,900 in the last few months of his employment.  *See* Trial Tr. 22:21-23:5; 23:10-23.  Plaintiff testified that he received raises approximately "every year, sometimes every two years," Trial Tr. 23:22-23.  Specifically, plaintiff testified that he was paid, per month, $1,300 in 2012, $1,400 in 2013, $1,600 in 2014, $1,500 in 2016, at some point $1,800, and then $1,900 in his last few months. *See* Trial Tr. 24:1-4.  Finally, plaintiff acknowledged that he was paid $60 for transportation every month, *see* Trial Tr. 25:24-26:1, and that he ate meals in the restaurant on a daily basis, *see* Trial Tr. 53:14-20; 54:8-16.  Plaintiff testified that he did not know the cost of the meals he ate at the restaurant, *see* Trial Tr. 54:8-16, and that he was not provided with any meal credit notices, *see* Trial Tr. 61:24-62:10.

There was some discrepancy in plaintiff's testimony with respect to the pay receipts. Although plaintiff testified to the monthly amounts stated above, he also agreed during cross-examination that the pay receipts, which do not entirely line up with his testimony, are "an accurate reflection of what" he was paid and when he was paid.  Trial Tr. 43:20-23.  And he acknowledged during direct examination that he signed the pay receipts on the days he received his compensation.  *See* Trial Tr. 25:17-23.  But when confronted with a particular pay receipt that apparently includes a notation in Mandarin that plaintiff worked only three days one week, plaintiff became agitated and appeared to suggest that it was not his signature on that pay receipt

because he did not remember working three days a week.  *See* Trial Tr. 46:16-48:9.  Plaintiff would not provide a clear answer to opposing counsel's question about whether it was his signature on that pay receipt, and he continued to reiterate that he did not remember working on that schedule.  *Ibid.*  Even after defendants' counsel tried to move on from that line of questioning, plaintiff continued to assert that he did not understand that pay receipt, reminded counsel that he has a "severe memory issue," and asked if the "boss" was "a dummy" for suggesting that he only worked three days.  Trial Tr. 49:1-25.

### 2.    Defendant Zhang's Testimony

Defendant Zhang testified that plaintiff worked three to five days a week, from 11 a.m. to 9 p.m., with a two-hour uninterrupted meal break from 3 p.m. to 5 p.m.  *See* Trial Tr. 76:6-19; 79:2-3; 97:3-22; 98:21-99:13; 100:2-5; 105:18-21.  She explained that the restaurant opened at 11:30 a.m., and that plaintiff was required to arrive by 11 a.m.  *See* Trial Tr. 75:14-16; 76:9-11; 100:5.  She also testified that the kitchen closed at 9 p.m., at which point plaintiff would usually eat his dinner and remain in the restaurant until Ms. Zhang and her husband could drive him home around 9:30 p.m.  Trial Tr. 79:17-18; 100:13-101:6.  According to Ms. Zhang, plaintiff was not required to wait at the restaurant and could leave at 9 p.m., but he chose not to, presumably so that he could eat and be driven home.  Trial Tr. 80:2-5; 80:15-16; 106:10-16.  Ms. Zhang also testified that she paid for plaintiff's meals at the restaurant, and that he ate approximately three meals per day.  *See* Trial Tr. 80:9-12.

Defendant Zhang stated that she paid plaintiff hourly wages that were usually a little bit higher than the minimum wage.  Trial Tr. 81:11-13.  Specifically, defendant Zhang testified that she paid plaintiff, per hour, $7.50 in 2013; $10 in 2014; $11 in 2015; $12 in 2016; $14 in 2017; and $15 in 2018.  Trial Tr. 81:11-82:15.  However, there is some suggestion in the record that

defendant Zhang switched to paying plaintiff a monthly wage in 2018, at least.  Specifically, the pay receipts indicate that Ms. Zhang paid plaintiff the same amount every two weeks from January through March, even though she testified that his working hours varied that year.  *See* Trial Tr. 88:9-14.  Defendant Zhang agreed with plaintiff that she paid him $60 for transportation every month.  Trial Tr. 82:16-22.

Defendant Zhang suggested that her testimony could be verified through the pay receipts that defendants produced.  *See* Trial Tr. 106:17-21.  As noted above, Ms. Zhang testified that the pay receipts contain all records of plaintiff's employment at Little Saigon Cuisine except for three months between December 2012 and mid-2013.  *See* Trial Tr. 85:25-86:6; 96:1-7.  She also explained that she paid plaintiff every two weeks.  *See* Trial Tr. 86:11-14.

Plaintiff's counsel questioned Ms. Zhang during cross-examination about the numbers reported in the corporate tax returns for "salaries and wages" and about whether she paid plaintiff additional wages in cash.  Ms. Zhang was not able to explain the tax returns and directed plaintiff's counsel to her accountant for further information about the tax returns.  *See* Trial Tr. 86:25-87:20; 89:2-90:7.  Without any information from the deposition of the accountant, it is difficult for me to draw any conclusions from the tax returns regarding the amount paid in wages to defendants' employees.  For example, I am not able to determine whether Ms. Zhang paid wages to herself as the owner of the corporate defendant; which numbers, if any, reflect cash wages; and what amounts, if any, were paid to any other employee who may have worked at the same time as plaintiff.  Given the underdeveloped testimony about the tax returns, I do not consider them in making my conclusions regarding plaintiff's hours and wage rates, because any findings based on these returns would be highly speculative.

### 3.     Factual Determinations

I credit Ms. Zhang's testimony regarding plaintiff's daily hours and the number of days he worked per week.  The two witnesses presented conflicting accounts, but Ms. Zhang was a more credible witness.  As discussed above, plaintiff relied entirely on his own testimony, despite admitting to severe memory problems.  He also failed to put forward any information at all about the gaps in his employment that are reflected in the pay receipts, even though he later agreed (at least initially) that the pay receipts accurately represented the amount he was paid and the dates on which he was paid.  Moreover, he admitted that he signed the pay receipts, but when he saw a pay receipt that did not support his account of the number of days he worked each week, he became upset and refused to clarify whether he was changing his initial testimony that he signed the pay receipts.  In contrast, Ms. Zhang credibly explained that she based plaintiff's hours on the opening and closing times of the restaurant.

Relying on Ms. Zhang's testimony, I find that plaintiff worked approximately 10 hours per day, with a two-hour meal break each day, and that he generally worked three to five days per week.  I also find that plaintiff was provided $60 per month to offset transportation costs, and that he ate approximately three complimentary meals per day at the restaurant, although I do not find that he was provided any notice of a meal credit.  Neither party testified as to whether defendants deducted the costs of the meals from plaintiff's wages, but I do not need to make a specific finding on that issue in light of other findings below.

The more difficult factual question is plaintiff's wage rate.  Plaintiff did not provide clear information about his wages.  He testified that he was initially paid $1,300 per month in 2012 and that he was eventually paid $1,900 per month in 2018, with incremental raises every year or two.  Plaintiff also testified that the pay receipts accurately reflect what he was paid, even though

those pay receipts do not entirely support his testimony.  For example, they do not reflect that he was paid $1,400 per month in 2013 or a consistent monthly wage in 2016.

Defendant Zhang's testimony was clearer.  She provided specific hourly rates that she claims to have paid plaintiff for each year of his employment.  But Ms. Zhang's testimony does not entirely line up with the pay receipts either.  As discussed below, Ms. Zhang admitted that Little Saigon Cuisine did not use an hourly timekeeping mechanism and instead tracked hours by the opening and closing hours of the restaurant.  That testimony suggests that plaintiff did not work partial days.  But if Ms. Zhang's testimony that plaintiff worked eight hours per day is credited (and I do credit it), then it would appear that plaintiff did work partial days.  If one divides some of the amounts that plaintiff was paid by the hourly rate Ms. Zhang testified to paying him, the resulting number of hours is not always evenly divisible by eight.  For example, it appears from the pay receipts that plaintiff was frequently paid $750 every two weeks in 2015.  Ms. Zhang testified that she paid plaintiff $11 per hour in 2015.  That would mean that plaintiff worked approximately 68 hours over a two-week period, for a total of 8.5 days.  Neither party addressed this discrepancy or attempted to explain it, and Ms. Zhang was not given an opportunity to testify about it.

I am not able to draw a specific conclusion about plaintiff's wages from this record.  Although I generally credit Ms. Zhang's testimony over plaintiff's testimony when the two conflict, I cannot fully credit Ms. Zhang's testimony about the hourly wages she paid plaintiff when the pay receipts defendants produced do not entirely support that testimony.  The pay receipts do not include enough information to substantiate either party's account of plaintiff's wage rate.  Indeed, the pay receipts only consistently include two data points—the date and amount that plaintiff was paid.  It is possible that plaintiff did work some half-day shifts, or that

17

defendants did take a meal credit from plaintiff.  It is also possible that Ms. Zhang sometimes paid plaintiff a monthly wage rather than an hourly wage, as she appears to have admitted to doing in 2018.  Whatever the reason for the discrepancy, however, it is not discernable on this record, and I make no finding about it.

## CONCLUSIONS OF LAW

The Fair Labor Standards Act ("FLSA") requires covered employers to pay their employees the statutory minimum wage, as well as a premium for overtime work performed beyond 40 hours per week.  *See* 29 U.S.C. §§ 206(a), 207(a)(1).  An employer must "make, keep, and preserve" records of employee wages, hours, and employment conditions.  29 U.S.C. § 211(c).  An employee bringing an action for unpaid minimum wages or overtime compensation under the FLSA "has the burden of proving that he performed work for which he was not properly compensated."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 84 (E.D.N.Y. 2012) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  If an employer fails to keep the required records, the employee may meet this burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Ibid.* (quoting *Anderson*, 328 U.S. at 687); *see Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997).  Plaintiff may meet this burden by relying on his recollection.  *See Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007).

If the plaintiff makes such a showing, the burden then shifts to the employer, whose obligations differ slightly under the FLSA and the NYLL.  Under the FLSA, an employer must "present evidence either of the precise wages paid or evidence to 'negative the reasonableness of the inference to be drawn from the employee's evidence.'"  *Doo Nam Yang v. ACBL Corp.*, 427

F. Supp. 2d 327, 332 (S.D.N.Y. 2005) (quoting *Anderson*, 328 U.S. at 688).  Similarly, under the NYLL, the employer must "prov[e] that the complaining employee was paid wages, benefits and wage supplements."  N.Y.L.L. § 196-a(a); *see Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 380 (E.D.N.Y. 2012); *Doo Nam Yang*, 427 F. Supp. 2d at 332 ("New York law incorporates a similar standard.").

In this case, defendants admit that they failed to keep adequate records of plaintiff's wages or of plaintiff's time.  *See* Trial Tr. 93:1-9; 91:16-18.  Accordingly, the next question is whether plaintiff has met his burden of showing "that he performed work for which he was not properly compensated"—a burden that he may meet by "produc[ing] sufficient evidence to show the amount and extent of [his] work as a matter of just and reasonable inference." *Gunawan*, 987 F. Supp. 2d at 84.  Plaintiff failed to meet that burden because his testimony was not credible, for the reasons discussed above—in particular, plaintiff admitted to severe memory problems and his testimony contradicted that of defendant Zhang, whom I found to be a more credible witness. Accordingly, plaintiff has not sustained his burden on his claims under the NYLL for unpaid minimum wages (Count II), unpaid overtime compensation (Count IV), and spread-of-hours pay (Count V), and defendants are entitled to judgment on those claims.  As discussed below, I dismissed plaintiff's claims under the FLSA (Counts I, III, and VIII) during trial.

Plaintiff also seeks damages for defendants' alleged failure to provide him with a time-of-hire wage notice and wage statements per pay period (Counts VI and VII), as required by NYLL § 195.  Because defendants concede that they failed to provide plaintiff with these wage notices, and do not succeed in establishing any affirmative defenses to those claims, plaintiff is entitled to judgment and statutory damages on Counts VI and VII.

## I.      Fair Labor Standards Act Claims

At the conclusion of plaintiff's case, defendants moved to dismiss plaintiff's claims under the FLSA.  I construed that motion as a motion for judgment as a matter of law under Fed. R. Civ. P. 52(c).  *See* Minute Entry and Order (Aug. 10, 2020).  For the reasons stated on the record, I granted defendants' motion and entered judgment as a matter of law against plaintiff on each of his three federal claims.  *See ibid.*  I briefly reiterate my legal conclusions here.

First, I dismissed plaintiff's claim for failure to reimburse for expenses relating to "tools of the trade."  Compl. ¶¶ 88-91; Trial Tr. 68:4-10.  Plaintiff alleged in his complaint that defendants did not pay him back for tickets he received and money he spent on gas while making deliveries by vehicle for defendants.  *See* Compl. ¶¶ 88-91.  But as described above, plaintiff testified during the trial that he did not make deliveries by vehicle—testimony that plaintiff's counsel admitted defeated plaintiff's tools of the trade claim.  *See* Trial Tr. 67:15-18.

I also dismissed plaintiff's minimum wage and overtime pay claims under the FLSA.  *See* Trial Tr. 68:11-69:10.  To prevail on such a claim, a plaintiff must show that plaintiff is "either" (i) "employed by an enterprise engaged in commerce or in the production of goods for commerce," or (ii) "engaged in commerce or in the production of goods for commerce."  *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010) (citing 29 U.S.C. §§ 206, 207(a)(1)); *see Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (applying the same test in the context of overtime wages); *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 21 (E.D.N.Y. 2020) (same).  Plaintiff sought to establish coverage for his FLSA claims on the first basis—commonly referred to as "enterprise" coverage.  *Jacobs*, 577 F.3d at 96 (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985)).

To establish enterprise coverage, the employer must, among other requirements, have "an annual gross volume of sales made or business done" of at least $500,000, not including excise taxes "at the retail level" that are separately stated.  29 U.S.C. § 203(s)(1).  As described above, plaintiff failed to demonstrate that Little Saigon Cuisine met this $500,000 threshold requirement.  Little Saigon Cuisine's tax returns show that the restaurant consistently reported gross sales significantly under $500,000, and plaintiff did not demonstrate that those tax returns were inaccurate.

## II.   New York Labor Law Claims

The New York Labor Law ("NYLL") "is the state analogue to the federal FLSA." *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011).  Although the NYLL "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales," it otherwise mirrors the FLSA in compensation provisions regarding overtime and minimum wage requirements.  *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013); *see Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("The New York Labor Law mirrors the FLSA in most aspects, including its wage and overtime compensation provisions.").

To recover under the NYLL against a defendant, a plaintiff must show that the defendant was plaintiff's "employer."  Under the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (quoting *Bynog v. Cipriani Grp., Inc.*, 802 N.E.2d 1090, 1093 (N.Y. 2003)); *see Matter of Vega*, 149 N.E.3d 401, 404-05 (N.Y. 2020).  New York courts consider several factors in assessing an employer's control, including, but not limited to, "whether the worker (1) worked at his own convenience, (2) was free to

21

engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Bynog*, 802 N.E.2d at 1093. "The doctrine is necessarily flexible because no enumerated list of factors can apply to every situation faced by a worker, and the relevant indicia of control will necessarily vary depending on the nature of the work." *Matter of Vega*, 149 N.E.3d at 405.

In their post-trial brief, defendants argue, for the first time and with little elaboration, that they "treated plaintiff as an independent contractor" and not an employee. Defs.' Post-Trial Br. at 8. Even assuming defendants did not waive this claim by failing to raise it at trial or develop it in their post-trial brief, *see Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015), I reject their argument because plaintiff successfully established that defendants were his "employers" under the NYLL. The first and fifth factors both weigh in plaintiff's favor, because plaintiff worked a fixed schedule—three to five days a week from 11 a.m. to 9 p.m., with a two-hour meal break—and not at his own convenience. *See* Trial Tr. 75:14-16; 76:6-19; 79:2-3; 97:3-22; 98:21-99:13; 100:2-5; 105:18-21. The third factor, regarding fringe benefits, also favors plaintiff, because he received free meals and a transportation allowance of $60. *See* Trial Tr. 25:24-26:1; 82:16-18. Defendant Zhang, whom I credited, also testified that when she hired plaintiff, she supplied him with a document "that certifies his work at the restaurant for him to apply for medical benefits." Trial Tr. 96:7-15. The second and fourth factors are neutral. I made no finding as to plaintiff's wages (though defendants introduced plaintiffs' pay receipts) and neither party introduced evidence showing that plaintiff was or was not free to seek other employment. In any event, these factors, "in context, merit modest weight." *Hart*, 967 F. Supp. 2d at 925.

Because three factors favor plaintiff and the other two are neutral, defendants exercised the requisite control over plaintiff to create an employment relationship under the NYLL. *See Matter of Vega*, 149 N.E.3d at 404-05; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015).

### A.      Unpaid Minimum Wage

Plaintiff alleges that defendants knowingly and willfully failed to pay him the minimum wage in New York.   Section 652(1) of the NYLL "requires employers to pay statutorily-determined minimum wages." *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011).  "If an employee is paid less than the minimum wage to which he is entitled under NYLL § 652(1), the employee may recover the amount of any such underpayment, together with costs and reasonable attorney's fees." *Ibid.* (citing NYLL § 663(1)).  Unless the employer proves a good-faith basis to believe that its underpayment of wages complied with the law, the employee may recover an additional amount as liquidated damages equal to 25 percent of the underpayments owed to the employee. *Ibid.*

As described above, the record includes conflicting accounts of plaintiff's wages throughout his employment for defendants.  Defendant Zhang testified that defendants paid plaintiff an hourly wage of $7.50 in 2013, $10 in 2014, $11 in 2015, $12 in 2016, $14 in 2017, and $15 in 2018. *See* Trial Tr. 81:11-82:15.  These wages exceed the minimum hourly wage in New York for all relevant years. *See* 12 N.Y.C.R.R. § 142-2.1.  I do not find plaintiff's contrary testimony credible in light of his demeanor at trial and asserted memory loss.  Nor did plaintiff introduce other credible evidence that he was paid less than the minimum wage.  Because plaintiff has not met his burden to establish defendants' liability under NYLL § 652(1), defendants are entitled to judgment on plaintiff's claim for minimum wages.

### B.     Overtime Pay

Plaintiff next alleges that defendants failed to properly compensate him for his overtime hours.  New York requires an employer to pay overtime compensation to non-exempt employees at "no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 12 N.Y.C.R.R. § 142-2.2).   Under the NYLL, which incorporates the FLSA's standards for determining whether time worked is compensable, "[b]ona fide meal periods" are not compensable periods for which overtime may be due.  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 499 (S.D.N.Y. 2017) (citing 29 C.F.R. § 785.19), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

Plaintiff has failed to establish an entitlement to overtime pay.  Plaintiff testified that he worked at least 12 hours per day, for six days per week, which would put him over the 40-hour work week requirement for receiving overtime compensation.   But defendant Zhang more credibly testified that plaintiff worked when the store was open, from about 11 a.m. to 9 p.m., with a two-hour meal break from 3 p.m. to 5 p.m., meaning that plaintiff worked eight hours per workday.  Defendant Zhang also testified that plaintiff worked a maximum of five days per week and sometimes less.  Because I credit defendant Zhang's testimony over plaintiff's testimony, I cannot find that plaintiff worked more than 40 hours per work week, as plaintiff was required to show to prevail on his claim for overtime compensation.  Defendants are accordingly entitled to judgment on this claim.

### C.     Spread-of-Hours Pay

Plaintiff also alleges that defendants violated New York's "spread-of-hours" requirement.  Under 12 N.Y.C.R.R. § 146-1.6, for any day in which the start and end of the workday are more than 10 hours apart, a restaurant employee is entitled to "one additional hour of pay at the basic

minimum hourly rate."  This provision applies "regardless of [the] employee's regular rate of pay."  *Ibid.*; *see Fermin*, 93 F. Supp. 3d at 45.

In this case, plaintiff was not entitled to spread-of-hours pay under New York regulations.  Defendant Zhang credibly testified that plaintiff worked during store hours, which generally meant 11 a.m. to 9 p.m.  Although plaintiff often stayed until at least 9:30 p.m. to eat dinner at the restaurant, defendant Zhang testified that he was free to leave after 9 p.m. and that he usually stayed in order to get a ride home with her and her husband.  Crediting defendant Zhang's testimony, the beginning and end of plaintiff's regular workday were 10 hours apart, but not more.  Defendants are therefore entitled to judgment on plaintiff's spread-of-hours claim.

### D. Time-of-Hire Wage Notice

Plaintiff has established a violation of the time-of-hire wage notice provision under New York law.  The NYLL requires an employer to provide its employee with a written wage notice "at the time of hiring."  NYLL § 195(1)(a).  The wage notice must be "in English and in the language identified by each employee as his or her primary language" and contain "(1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any 'doing business as' names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the [C]ommissioner [of the Department of Labor] deems material and necessary."  *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 474 (S.D.N.Y. 2015) (citing NYLL § 195(1)(a)).  For all employees who are not exempt from overtime compensation, the notice must also state the regular hourly rate and overtime rate of pay.  *Id.* at 474 n.35 (citing NYLL § 195(1)(a)).

At the time plaintiff was hired in 2012, Section 198(1-b) provided that any employee not provided the wage notice required by Section 195(1)(a) "within ten business days of his or her first day of employment" was entitled to recover $50 for each work week that plaintiff was not provided the wage notice, up to a maximum of $2,500, together with costs and reasonable attorneys' fees.  NYLL § 198(1-b) (as effective April 9, 2011 to Feb. 26, 2015).  Section 198(1-b) was later amended to increase the damages available to an employee to $50 per *work day*, up to a maximum of $5,000.  *See ibid.* (as effective Jan. 19, 2016).  But such an amendment to the NYLL does not apply retroactively, absent a clear expression of legislative intent.  *See Gold v. New York Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013) (holding that an amendment that raised the amount of recoverable liquidated damages under Section 198(1-a) did not apply retroactively and reasoning that "[r]etroactive operation is not favored by [New York] courts and statutes" absent "a clear expression" of legislative intent (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 696 N.E.2d 978, 980 (N.Y. 1998))); *see also Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 16-CV-5735, 2017 WL 2600051, at *8 (S.D.N.Y. June 15, 2017) (applying the holding of *Gold* to Section 195); *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *21 n.11 (E.D.N.Y. Sept. 22, 2017) (stating that the amendment to Section 198(1-b) that increased damages to a maximum of $5,000 did not apply retroactively).  Plaintiff's damages are therefore limited to $50 for each work week that he was not provided a wage notice, up to a maximum of $2,500, together with costs and reasonable attorney's fees.

Defendants concede that they never provided plaintiff with the wage notice required by Section 195(a)(1) when plaintiff was first hired.  *See* Defs.' Post-Trial Br. at 8.  But defendants argue that they are nevertheless entitled to judgment on this claim based on an affirmative defense in Section 198(1-b).  That section provides that in any action to recover damages for a

violation of Section 195(a)(1), "it shall be an affirmative defense that" either "(i) the employer made complete and timely payment of all wages due" or "(ii) the employer reasonably believed in good faith that it was not required to provide the employee with [a wage] notice" as required by Section 195(a)(1).  *See* NYLL § 198(1-b).  Here, defendants do not argue that they "believed in good faith" that they were not required to provide plaintiff with a wage notice, but only contend that they made complete and timely payment of all wages owed to plaintiff.  *See* Defs.' Post-Trial Br. at 8.

Defendants' affirmative defense fails because they have not shown that they "made complete and timely payment of all wages due."  As explained above, on the record at trial, I have not been able to determine whether or not defendants completely and timely paid all wages. While that fact means that plaintiff cannot prevail on his NYLL wage and overtime claims, it also means that defendants cannot meet their burden of establishing the affirmative defense on plaintiffs' wage-statement claims.  *See Adonias v. Al Horno Lean Mexican Kitchen Inc.*, No. 16-CV-07266, 2018 WL 4007643, at *11 (S.D.N.Y. Aug. 22, 2018) (rejecting defendants' affirmative defense under Sections 198(1-b) and 198(1-d) because defendants failed to show that they "made complete and timely payment of all wages due").

Because defendants concede that they never provided plaintiff with the wage notice required by Section 195(a)(1), plaintiff is entitled to damages under Section 198(1-b).  Since plaintiff worked more than 50 weeks total after he was hired in December 2012, he is entitled to $2,500, the maximum statutory award available at the time he was hired, together with costs and reasonable attorney's fees, for defendants' failure to provide him with a time-of-hire wage notice.

E.        **Wage Statements**

Finally, plaintiff has established that defendants failed to provide him with a regular wage statement, as they were required to do under NYLL § 195(3).  Section 195(3) requires employers to "furnish each employee with a statement with every payment of wages."  NYLL § 195(3).  The wage statement must include certain information, including the dates of work covered by that payment of wages; the employee's name; the name, address, and phone number of the employer; rates of pay; gross wages, deductions, and net wages; and for employees not exempt from overtime compensation, information about overtime hours worked and overtime compensation.  *See ibid.*  In 2012, when plaintiff was hired, Section 198(1-d) provided that an employee who established a violation of Section 195(3) could recover "damages of *one hundred dollars* for each work *week* that the violations occurred or continue to occur, but not to exceed a total of *twenty-five hundred* dollars, together with costs and reasonable attorney's fees."  NYLL § 195(3) (as effective April 9, 2011 to Feb. 27, 2015) (emphases added).  But that provision was revised, effective February 27, 2015, to provide damages of "*two hundred fifty dollars* for each work *day* that the violations occurred or continue to occur, but not to exceed a total of *five thousand dollars*, together with costs and reasonable attorney's fees."  *See* NYLL § 198(1-d) (as effective Feb. 27, 2015 and as revised Jan. 19, 2016 to present).  The revised provision applies in this case, because "[u]nlike the enforcement provision for addressing deficient wage-and-hour notices, [Section 198(1-d)] allows recovery for noncompliance that occurs well after an employee's first ten days at a job."  *Nunez v. Broadway Beauty Wholesale Inc.*, No. 19-CV-362, 2020 WL 6063536, at *6 (S.D.N.Y. Oct. 14, 2020).

Plaintiff is entitled to recover damages under NYLL § 195(3).  The parties do not dispute that defendants failed to provide plaintiff with wage statements providing the information required by Section 195(3).  Like Section 198(1-b), Section 198(1-d) also affords employers an

affirmative defense to claims that an employer failed to provide sufficient wage statements, and defendants raise that defense to plaintiff's claim here.   *See* Defs.' Post-Trial Br. at 8.   As discussed above, however, the defense is available only when employers make "complete and timely payment of all wages due."   NYLL § 198(1-d).   Because defendants have not established that they paid plaintiff the minimum wage or overtime wages, their defense fails and they are liable for violating the wage statement provision of the NYLL.

For this violation, plaintiff is awarded $5,000 damages under the statute, together with costs and reasonable attorney's fees.   Plaintiff is entitled to $250 for each work day that he did not receive a wage statement.   I found that plaintiff worked for defendants for five days per week for each of the two-week periods indicated on defendants' pay receipts (plus three months before the first pay receipt in 2013), meaning that he would have accrued the statutory maximum of $5,000 after 20 workdays, or two pay periods.   The pay receipts indicate that plaintiff worked well more than two pay periods after Section 198(1-d) was revised in February 2015.   *See* Defs.' Response to Mot. in Limine.   Plaintiff is therefore entitled to the maximum damages of $5,000 available under Section 198(1-d), together with costs and reasonable attorney's fees.

### F.   Pre-Judgment and Post-Judgment Interest on Wage Notice Claims

Plaintiff seeks to recover pre-judgment interest on damages awarded under the NYLL. *See* Compl. at 17; Pl.'s Post-Trial Br. at 9-10 (citing N.Y. C.P.L.R. § 5004).   Plaintiff is not entitled to recover pre-judgment interest on the damages awarded, however, because such interest does not apply to the provisions under which he prevailed, which are contained in the Wage Theft Prevention Act, §§ 195(1)-(3).   *See Piedra v. Ecua Rest., Inc.*, No. 17-CV-3316, 2018 WL 1136039, at *16 (E.D.N.Y. Jan. 31, 2018) (awarding plaintiff pre-judgment interest on unpaid overtime and spread-of-hour wages, but concluding that "plaintiff is not entitled to prejudgment interest on amounts awarded under the Wage Theft Prevention Act"), *report and*

*recommendation adopted*, No. 17-CV-3316, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018); *Guaman v. Krill Contracting, Inc.*, No. 14-CV-4242, 2015 WL 3620364, at *10 (E.D.N.Y. June 9, 2015) ("Plaintiff is not, however, entitled to pre-judgment interest on amounts awarded under the Wage Theft Protection Act."); *Santana v. Latino Express Rests., Inc.*, 198 F. Supp. 3d 285, 295 (S.D.N.Y. 2016) (awarding pre-judgment interest on plaintiff's unpaid wages award but not plaintiff's Wage Theft Prevention Act damages award).  Accordingly, pre-judgment interest does not apply to plaintiff's damages award.

Plaintiff is entitled, however, to post-judgment interest.  Under 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  Courts in this circuit have accordingly awarded post-judgment interest where a plaintiff is entitled to damages under the NYLL.  *See, e.g.*, *Fermin*, 93 F. Supp. 3d at 53; *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620, 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015).  Plaintiff is therefore awarded post-judgment interest, to be calculated from the date of the entry of judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

Finally, under NYLL § 198(4), if the damages that plaintiff is awarded under Sections 198(1-b) and 198(1-d) remain unpaid 90 days "following issuance of judgment, or . . . after expiration of the time to appeal and no appeal is then pending, whichever is later," then the total amount of damages awarded to the plaintiff "shall automatically increase by fifteen percent."

**CONCLUSION**

Plaintiff is entitled to judgment on his claims that defendants failed to provide him a time-of-hire wage notice under NYLL § 195(1) and that defendants failed to provide him with wage statements under NYLL § 195(3).   Plaintiff is therefore entitled to (i) $2,500 for defendants' violation of Section 195(1) and (ii) $5,000 for defendants' violation of Section 195(3), for a total of $7,500, as well as costs, reasonable attorney's fees, and post-judgment interest.  If the damages remain unpaid following the issuance of judgment or after the expiration of time to appeal, whichever is later, plaintiff's damages shall increase by 15 percent.  Plaintiff is denied pre-judgment interest.   Defendants are entitled to judgment on plaintiff's remaining claims.

SO ORDERED.

/s/ *Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 30, 2021
         Brooklyn, New York